# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**KEITH DUNMORE,**

    **Petitioner,**

**v.**                                                           **Civil Action No. 5:06cv137**
                                                                         **(JUDGE STAMP)**

**WARDEN JOYCE FRANCIS,**

    **Respondent.**

## REPORT AND RECOMMENDATION

On November 8, 2006, the *pro se* petitioner, Keith Dunmore, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The petitioner is an inmate at the Gilmer Federal Correctional Institution in Glenville, West Virginia. In the petition, the petitioner argues that respondents have erred in denying him parole. On December 20, 2006, the respondent filed his Response to the petition seeking the summary dismissal of the case. On January 5, 2007, the petitioner filed a reply to the respondent's response.

This matter, before the undersigned for a Report and Recommendation pursuant to LR PL P 83.09, et seq., is ripe for review.

## I. FACTUAL AND PROCEDURAL HISTORY

The petitioner is currently serving three convictions from the Superior Court of the District of Columbia. All three are from the year 1992. The first, on February 28, 1992, was for the offense of armed robbery and armed kidnapping in violation of DC Code 22-2901 and 22-2101 for which he received a thirty year sentence. (Doc. 7-3, p. 1). The second, on March 6, 1992, was for the offense of possession with intent to distribute cocaine for which he received a six year sentence.

(Doc. 7-3, p. 2). The third, on March 9, 1992, was for the offense of attempted robbery in violation of DC Code 22-2901 for which he received a sentence of three years. (Doc. 7-3, p. 3).

On November 8, 1999, a Parole Commission hearing examiner conducted the petitioner's initial parole hearing on his combined thirty-three year sentence. The recommendation was to deny parole and continue for rehearing in February of 2002, thirty-six months from his parole eligibility date of March 24, 1999. (Doc. 7-4). A Notice of Action, dated January 10, 2003, adopted the recommendation. The petitioner's base score, which is used to determine the timing of the next parole hearing was a 6. The guidelines indicated that a rehearing should be conducted within eighteen to twenty-four months of the petitioner's parole eligibility date, but the Commission departed from the guidelines and continued for a rehearing thirty-six months after the petitioner's parole eligibility date. (Doc. 7-5).

On March 20, 2002, a Commission hearing examiner conducted the petitioner's rehearing. (Doc. 7-6). On April 17, 2002, the Commission issued its decision which adopted the hearing examiner's recommendation, denied the petitioner parole and continued him to a rehearing in September of 2003 after the service of another eighteen months. (Doc. 7-7).

On September 5, 2003, a Commission hearing examiner conducted the petitioner's rehearing. At this hearing, the petitioner's total point score under the D.C. point score system was converted into a range of guidelines to be served before parole. The hearing examiner converted the petitioner's base point score of 6 from the previous hearing to a guideline range of 36 to 48 months. The hearing examiner then added the number of months to be served until the petitioner was eligible for parole, which was 88 months. The hearing examiner then added a range of 36 to 76 months for disciplinary infractions incurred by the petitioner before his last hearing, which resulted in a

2

guideline range of 160 to 212 months to be served before being paroled. The hearing examiner recommended that the petitioner be paroled after he had served 175 months. (Doc. 7-8, pp. 1-2). An Executive Reviewer disagreed with the hearing examiner's guideline range and also with the recommendation. Specifically, he found that the number of months to parole eligibility was 93 rather than 88. Therefore, the Executive Reviewer calculated the total guideline range as 165-189 months. Furthermore, based in the petitioner's numerous disciplinary reports, including two Category Three charges, the Executive Reviewer concluded that a rehearing should be scheduled in 36 months, at which time the petitioner would have been in custody for 179 months. (Doc. 7-8, p. 3).

On October 24, 2003, the Commission issued its Notice of Action which conformed with the Executive Reviewer's recommendation. Accordingly, the Commission's decision was to deny the petitioner parole and continue him to a three-year reconsideration hearing in September 2006.(Doc. 7-9).

On January 26, 2005, the Bureau of Prisons ("BOP") conducted a disciplinary hearing for the petitioner, who had been charged with assaulting his visitor. The Disciplinary Hearing Officer ("DHO") found that the petitioner had grabbed his female visitor with both hands and pulled her back into her seat and held her in the seat with his forearm on her shoulder. The DHO found the petitioner guilty of committing assault. (Doc. 8-8, pp. 2-4).[1]

On October 11, 2006, a Commission hearing examiner conducted petitioner's

---

[1] On August 18, 2005, the petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking the expungement of those disciplinary charges from his record, reinstatement of visiting privileges, and restoration of Good Conduct Time credits. On June 25, 2007, The Honorable Irene M. Keeley entered an Order denying the petition. (See 1:05cv119)

reconsideration hearing.   The hearing examiner considered the DHO finding that petitioner had committed assault in the institution.  Although the petitioner denied the charge and stated that he was just playing with his visitor, the hearing examiner recommended that the Commission find that he had committed an assault and further recommended that disciplinary guidelines of 0 to 10 months be added to his parole guidelines as determined at his previous hearing.  That recommendation brought his total guideline range to 165 to 199 months. (Doc. 7-11, pp. 2-4).

On October 23, 2006, the Commission issued its decision denying the petitioner parole and continuing him to a three-year reconsideration hearing in October of 2009.  Because the petitioner had already been in custody for 179 months on the date of the October 2006 rehearing, this decision exceeded the parole guidelines of 165 to 199 months.  The Commission gave the following reason for its decision to exceed the guidelines:

> [Y]ou are a more serious risk than indicated by the guidelines in that your original offense behavior involved Armed Robbery, Armed Kidnapping, and Attempted Robbery.  You have two prior convictions for CDW-Gun and Attempted Robbery.  Since your incarceration, you have incurred three disciplinary infractions involving new criminal conduct.  Two of your infractions involved Assault on a staff member and the third involved possession of a knife during a fight with another inmate.  You're (sic) most recent violation involved a new criminal conduct when you assaulted your visitor.  Your propensity to react violently shows that you are still a risk to the community, warranting your completion of an anger management program and maintaining clear conduct until your next hearing.

(Doc. 7-12).

## II.  CLAIMS OF PETITION

With regard to October 11, 2006 hearing, and the resulting Notice of Action by the Commissioner, petitioner asserts the following grounds for relief:

(1) the Commission engaged in an impermissible double count with respect to his two

4

prior convictions for CDW-gun and attempted robbery

(2) the Commission arbitrarily rated institutional infractions as new criminal conduct; and

(3) the Commission improperly denied parole by basing its decision on the need for punishment;

### III. ANALYSIS

On August 5, 1998, the Commission obtained jurisdiction of D.C. Code offenders to grant and deny parole through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745, D.C. Code §24-1231(a)("Revitalization Act."). See also Franklin v. District of Columbia, 163 F.3d 625, 632 (D.C. Cir.1998). Effective August 5, 2000, the Commission was given the responsibility of supervising parolees and revoking parole. §11231(a)(2) of the Act codified at D.C. Code §24-131(a)(2). The Revitalization Act provided that the Parole Commission was to follow the parole law and regulations of the District of Columbia, but also granted the Commission "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons." D.C. Code Ann. § 24-131(a)(1); Simmons v. Shearin, 295 F.Supp.2d 599, 602 (D.Md.2003).

Subsequently, the Commission established amendments and revisions to the 1987 guidelines of the D.C. Board of Parole, which had remained in effect until August 5, 1998. See 28 C.F.R. §2.70, et. seq. On July 21, 1998, the Commission's amended version of the parole rules and guidelines were published in the Federal Register at 63 FR 39172 and are found at 28 C.F.R. §2.70 et. seq. The Commission's decision-making guidelines are found at 28 C.F.R. §2.80.

Because the Constitution itself does not create any liberty interest in parole, such an interest must emanate from state law, or in this case, District of Columbia law. See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979). Courts have consistently held that the D.C. parole statute, which applies to D.C. Code offenders even after they were transferred to the jurisdiction of the Commission, does not create any liberty interest in parole. See, *e.g.*, McRae v. Hyman, 667 A.2d 1356 (D.C. 1995) (The District's parole scheme confers discretion to grant or deny parole and the scoring system creates no liberty interest overriding the exercise of that discretion); Ellis v. District of Columbia, 84 F.3d 1413 (D.C.Cir. 1996) (D.C. parole statute and regulations do not create any liberty interest in parole.) Furthermore, Congress committed decisions to grant or deny parole to the absolute, unreviewable discretion of the Commission. Garcia v. Neagle, 660 F.2d 983, 988 (4th Cir. 1981). Parole decisions are therefore not subject to arbitrary and capricious or abuse of discretion review under the provisions of the Administrative Procedures Act, 5 U.S.C. § 701(a)(2). Rather, judicial review is limited to a consideration of whether the Commission "exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations. Garcia at 988; see also Fardella v. Garrison, 698 F.2d 208, 210 (4th Cir. 1982).

Accordingly, the Commission's exercise of its discretion in denying the petitioner parole and departing from the guidelines is unreviewable, and thus this Court is "without power to engage in judicial review of the Commission's substantive decision" to deny him parole, Garcia at 988. In other words, the substance or merits of the parole decision concerning the petitioner are beyond judicial review. However, the petitioner's claims must still be analyzed to determine whether they may be read as claiming that the Commission acted without authority, unconstitutionally, or in contravention of its own regulations.

**A. Ground One**

At the petitioner's most recent parole hearing, his current total guideline range was 165-199 month(s), thus suggesting that he be released after 199 months of service. The petitioner contends that the Commission impermissibly utilized "double counting" as a basis for exceeding the guideline range. More specifically the petitioner alleges that because his prior convictions for carrying a dangerous weapon (gun) and attempted robbery were used to compute his base guideline range[2], which is used to establish the parole guidelines, the Commission was precluded from designating these same convictions as a basis for its decision to exceed the guidelines.

Double counting occurs when the criteria used to establish the parole guidelines are used to justify a departure from those guidelines. Romano, supra at 271. Here, the petitioner might be entitled to relief, if the only basis for the Commission's decision to exceed the guidelines were his prior convictions for carrying a dangerous weapon and attempted robbery. Those prior convictions were clearly used to establish his base guideline range, and thus were considered in establishing his total guidelines range. Therefore, the Commission could not use those prior convictions as the sole

---

[2]An individual's Base Guideline Range is calculated by assigning numerical values to specific pre-and-post incarceration factors. The first numerical assignment is the salient factor score or risk of recidivism which is determined by the following factors: (1) the number of prior convictions/adjudications; (2) the number of prior commitments of more than 30 days; (3) the inmate's age at commencement of the current offense/prior commitment of more than 30 days; (4) the length of recent commitment free period; (5) whether the inmate was on probation/parole/confinement/escape status at the time of the current offense; and (6) whether the inmate was 41 years of age or more at the commencement of the current offense. A prisoner can score from one to ten. The higher the score, the better the prospects for success if released on parole. See 28 C.F.R. § 2.20 Salient Factor Score Manual. Petitioner's salient factor score is a 3. The second numerical assignment is given for current or prior violence. Because the plaintiff's current offense involved violence and he had felony violence in at least one prior offense, he was assigned a numerical value of three for a total base score of 6.

basis for its decision to exceed the guidelines.[3]

However, in its unreviewable discretion, the Commission may consider "unusual circumstances" to depart from the guidelines. 28 C.F.R. § 2.80(n)(1). The federal regulations define "unusual circumstances" as "case-specific factors that are not fully taken into account in the guidelines, and that are relevant to the grant or denial of parole." Id. Therefore, in makings its 2006 decision, the Parole Commission complied with its own regulations, which permit it, at a reconsideration hearing, to schedule another hearing after 36 months (28 C.F.R. § 2.75(a)(iv)), and which provide for a decision above the guidelines where the Commission finds, as it did here, that a prisoner is a "more serious risk." Furthermore, the record reflects that the Commission's decision to depart from the guidelines was not arbitrary, but rather based upon review of all the information presented in the hearing examiner's report. Therefore, the petitioner has failed to demonstrate that the Commission disregarded its procedures, acted beyond its legal authority, or violated the Constitution in departing from the guidelines.

**B. Ground Two**

To establish a guideline range for prison misconduct, the Commission classifies the misconduct as (1) an Administrative Rule Infraction, (2) Escape or New Criminal Behavior in a Prison Facility, or (3) New Criminal Behavior in the Community. See 28 C.F.R. § 2.36(a). Here, the Commission determined that the petitioner's act of grabbing his female visitor, pulling her into

---

[3]In his response to the petition, respondent's counsel argues that no double counting occurred because the salient factor score focuses on the number of prior convictions, and the Commission's basis for exceeding the parole guidelines was the nature of those convictions. In support of this position, counsel cites a number of cases from 1981 and 1982. It would appear that those cases were decided before 28 C.F.R. § 2.80 was amended so as to arrive at base point score by considering not only the number of prior convictions but also the nature of those convictions.

her seat, and forcing her to sit using his forearm on her shoulder, came within the category of New Criminal behavior in a Prison Facility. Once it determined that the misconduct constituted new criminal conduct, the Commission classified its severity under the provisions of 28 U.S.C. § 2.20, U.S. Parole Commission Offense Behavior Severity Index, Ch. 2, subch. B, 212(c). In petitioner's case the severity of the assault was graded as category two with resulting guidelines of 0 to 10 months added to his parole guidelines. See 28 C.F.R. § 2.36(a)(2)(ii).

The petitioner argues that the Commission failed to follow its own regulations when it arbitrarily rated this incident as new criminal conduct. The petitioner argues that his January 1, 2005 incident report for allegedly violating institutional conduct code 224 when he grabbed his visitor's arm should have been classified a minor assault or administrative rule infraction rather than new criminal conduct, and he should not have received an additional guideline range of 0 to 10 months. In making this argument, the petitioner relies on a procedural note to the Commission's regulations. See Note 2.36-02 of the U.S. parole Commission Rules and Procedures Manual. However, the petitioner's reference is to the unofficial commentary on the official Commission regulations, which are intended for internal guidance and 'do not confer legal rights and are not intended for reliance by private persons." See Introduction to the Rules and Procedures Manual at 7.

In addition, the petitioner argues that the Commissioner's characterization and scoring of his disciplinary infraction as new criminal conduct was also clearly "capricious, irrational and unreasonable" as his disciplinary infraction did not result in a new felony or misdemeanor offense. However, the Commission is not limited to considering only conduct which results in criminal charges. In making a parole decision for federal prisoners, the Commission may consider official reports of the prisoner's prior record, reports from the staff of the facility where the prisoner is

confined, and any other relevant information concerning the prisoner that is reasonably available. See 18 U.S.C. §4207. Furthermore, in calculating the range of guidelines that a prisoner sentenced under the D.C. Code must serve, the Commission may consider a progress report prepared by the institution where the prisoner is incarcerated, which provides a summary of the disciplinary infractions committed by the prisoner. A prisoner's institutional record, whether good or bad, is relevant in determining whether he or she will be able to live in the community without committing additional crimes and whether his or her release will be compatible with the welfare of society. See D.C. Code § 24-404, Hall v. Henderson, 672 A.2d 1047, 1055 (D.C. 1996) (upholding D.C. Parole Board's decision to exceed the parole guidelines based upon negative institutional behavior). Finally, in determining parole guidelines, the Commission's regulations permit it to take into account "any substantial information available to it provided the prisoner is apprised of the information and afforded an opportunity to respond." See 28 C.F.R. § 2.19(c). Accordingly, the Commission acted well within its discretion in adding a range of 0-10 months to the petitioner's guideline range based upon its determination that his disciplinary infraction constituted new criminal conduct.

With respect to his history of institutional misconduct, the petitioner also objects to the Commission's consideration of misconduct that had been considered at previous hearings. As previously noted, judicial review of a decision by the Parole Commission is limited. "So long as there are no violations of any required due process protections and the Commission has acted within its authority, [the District Court] will not usurp the Commission's position as established in the statutory scheme enacted by Congress," Stroud v. United States Parole Commission, 668 F.2d 843, 846 (5th Cir. 1982). which provide for a decision above the guidelines where the Commission finds

that a prisoner is a "more serious risk." Here, the record reflects that the Commission utilized the petitioner's history of disciplinary infractions to reach its decision that he is a "more serious risk" than the guidelines suggest. Again the petitioner has made no showing that the Commission's decision to depart from the guidelines was arbitrary, nor that it acted beyond its legal authority or violated the Constitution. Accordingly, there is no basis from which this Court can review the merits of the Commission's substantive decision to deny the petitioner parole.

**C. Ground Three**

As his final ground for seeking habeas relief, the petitioner argues that the Commission exceeded its authority because its decision was not based upon a determination of the degree of risk that he posed to the public safety, but rather, on the need to punish him. A review of the Commission's decision clearly establishes that the petitioner's claim is without merit.

The Commission's discretion to grant parole is rooted in statutory authority, and more specifically in D.C. Code § 24-404(1) which provides the following with regard to D.C. offenders:

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole...

The decision to parole a prisoner is left to the Commission's discretion to determine "whether the prisoner is likely to be a responsible citizen if he is returned to the community and **whether release on parole is consistent with the public safety**." Wyatt v. Hyman, 647 A.2d 1175, 1179 (D.C. 1994)(emphasis added).

Here, the Commission decided to depart from the guidelines based upon its conclusion that the petitioner posed a serious risk to public safety. In departing from the guidelines, the

11

Commission provided a written statement of the reasons for the departure in conformity with 28 C.F.R. § 2.74(b). Because the Commission complied with the relevant statutes and regulations dealing with parole, there is again no basis for this Court to review its substantive decision to deny the petitioner parole.

### IV. RECOMMENDATION.

For the reasons stated above, the undersigned recommends that the petitioner's §2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp. Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); .

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Report and Recommendation to counsel of record via electronic means.

DATED: March 3, 2008

        /s/ James E. Seibert
        JAMES E. SEIBERT
        UNITED STATES MAGISTRATE JUDGE